# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| FIRTIVA CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 2:21-cv-111-JRG-RSP |
| v. | : | |
| | : | |
| FUNIMATION GLOBAL GROUP, LLC, | : | |
| | : | |
| Defendant. | : | |
| | x | |

**DEFENDANT'S OBJECTIONS TO CLAIM CONSTRUCTION**
**MEMORANDUM OPINION AND ORDER (DKT. NO. 63)**

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule CV-72(b), Defendant Funimation Global Group, LLC ("Funimation") objects to the Magistrate Judge's January 3, 2022, Claim Construction Order, Dkt. No. 63 (the "Order"), construing certain claim terms in U.S. Patent No. 10,116,999. Funimation respectfully submits that the Court's constructions of (1) the preambles and/or "receiving an enticement …" and "transmitting the enticement …" (finding no disavowal), (2) "user information," and (3) "the data comprising at least one of a TV channel, content name, timestamp, time slice, and sponsor identification," are clearly erroneous and contrary to law. Funimation respectfully requests that the Court overall Magistrate Judge Payne's erroneous claim constructions and modify the Order to adopt the correct constructions as detailed below.

## I.  Disavowal Should Be Found As To All Claims Via Their Preambles Or "Receiving An Enticement …" And "Transmitting The Enticement …"

Funimation objects to the Court's failure to find disavowal that limits all claims (via the preambles or the receiving/transmitting elements) to require that any enticement received or transmitted must not interrupt the broadcast. The Court rejected Funimation's proposed construction that all claims require that any enticement received or transmitted must only occur after the broadcast so that the broadcast is not interrupted, because the specification does not explicitly rule out the hypothetical possibility that enticements could be sent or received such that a viewer could choose to somehow watch such enticements during the broadcast. This hypothetical is entirely unsupported by the specification and is thus both clearly erroneous and contrary to law. There is no reasonable doubt that the specification provides clear disavowal of any construction that would permit the claims to cover a system where an enticement is viewed by a user in a way that interrupts a broadcast.

The Court's finding of no disavowal is completely inconsistent with the intrinsic and extrinsic evidence as detailed in Funimation's Brief, Dkt. No. 47, at 1-7, 11-17. All portions of the

'999 Patent, including the Title, Background, Summary, and Detailed Description, provide clear and unmistakable statements that the invention requires the enticements to be received, transmitted and/or viewed *without interrupting* the broadcast. The extrinsic evidence cited by Funimation, *id.* at 16-17, fully supports this as well.

"Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) (citation omitted). Here, the Court's Order erroneously puts a burden on Funimation to identify a negative statement in the '999 Patent as a requirement to establish that the specification disclaimed subject matter. Although the Court did not find an express, negative statement in the '999 Patent that "enticements cannot be viewed while the broadcast is ongoing," Opinion at 8, the specification makes it clear—through positive statements—that viewing enticements that interrupt a broadcast is precisely what the invention avoids.

The disavowal follows from the title, "Method For Advertisers To Sponsor Broadcasts *Without Commercials*," from the Abstract: "A system and method that allows content to be broadcast *without commercial interruption* …," from the entirety of the Background, which disparages prior art broadcasts interrupted with commercials that "break up the shows, making the viewing experience less enjoyable and informative," '999 Patent, 1:13-47, and from the fact that all disclosed embodiments are limited to a system where enticements are only received and viewed after a broadcast is completed.

The Court's finding that the disparagement in the Background weighs against disavowal is also clearly erroneous since the Background not only focuses on corporate sponsors of commercials but also on viewers and their viewing experience: "These commercials break up the

shows, making *the viewing experience* less enjoyable and informative." *Id.* 1:23-25; "If it were not for these commercial interruptions, *television viewing* would be much greater." *Id.* 1:28-29; "A method that allows companies to sponsor broadcasts while avoiding commercial interruptions is ideal for the broadcaster *and for the viewer*." *Id.* 1:40-43.

Indeed, the very first sentence of the Summary of the Invention states: "*The present invention* allows content to be broadcast *without commercials* [sic] *interruption*, yet lets the company or companies that sponsor the broadcast to [sic] offer advertisements and discounts and various special offers to the viewers *at a later time* of their own choosing." *Id.* 1:48-55. All four embodiments in the Summary and Detailed Description also explain that "at a later time," which is relative to *the broadcast*, the viewer can then use an Internet-connected TV or computer to connect to a website and receive the enticements based on the amount of time watched. *Id.* 2:4-3:16; 3:56-4:8, 4:39-58, 4:59-5:10. The Court's reliance on the statements that enticements can be offered "at a later time, of the viewer's choosing" for not finding disavowal is based on an unsupported hypothetical construct and thus both clearly erroneous and contrary to law. The full and clear context of these statements is that the enticements are sent or received "at a later time" relative to the broadcast being watched such that the broadcast is not interrupted (and not relative to placing or updating cookies or sending data to a centralized database).

Accordingly, all claims should be construed to require that any enticement received or transmitted must not interrupt the broadcast.

## II.     "User Information" Should Be Found Indefinite

The Court's ruling that "user information" is not indefinite is clearly erroneous and contrary to law since this term fails to provide a POSITA reasonable certainty regarding the scope of the claimed invention. While "user information" may have various different meanings in other patents and articles as cited by Firtiva, Dkt, No. 44, at 12-14, that does not make the term definite

in the context of the '999 Patent. The term "user information" is not explained or discussed anywhere in the patent, and is never used in the specification. The term also did not appear in the claims until an amendment filed 16 years after the original application was filed. Dkt No. 47-6.

The specification only provides a single, unhelpful statement possibly relating to "user information," namely: "When connecting to the website, using the standard HTTP protocol, the user identifier is sent to the website which then examines the central database and retrieves *the information in it* for this particular user." '999 Patent, 2:37-40. This passage fails to inform a POSITA with reasonable certainty as to what is "the information in it," i.e., what is the information in the central database for the particular user. The Court should thus find this phrase indefinite for the reasons set forth above and in Funimation's Brief, Dkt. No. 47, at 17-22.

### III. "the data comprising at least one of a TV channel, content name, timestamp, time slice, and sponsor identification"

The Court's construction of this phrase, changing the "and" to "or," is contrary to law, including the analogous *SuperGuide* case, 358 F.3d 870 (Fed. Cir. 2004). The Court's construction is also contrary to the undisputed intrinsic evidence, including: (1) antecedent basis requiring *two* of the five elements, (2) the '999 Patent's own claim differentiation contrasting use of "at least one of a, b, c, d *or* e" in claims 7, 13, 25 and 32, and (3) the uncontested inoperability of the invention if only one element, such as "TV channel," were provided as the data. For these reasons and all the reasons in Funimation's Brief, Dkt. 47, at 23-26, the Court should find the data must include at least one TV channel, at least one content name, at least one timestamp, at least one time slice, and at least one sponsor identification.

### IV. CONCLUSION

For the foregoing reasons, Firtiva respectfully requests the Court to set aside the Order's constructions of the three above-identified limitations and to adopt Funimation's constructions.

Dated:  January 18, 2022

Respectfully submitted,

*/s/ Gregory S. Gewirtz*
Gregory S. Gewirtz (*pro hac vice*)
Jonathan A. David (*pro hac vice*)
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
20 Commerce Drive
Cranford, NJ 07016
Tel:    908.654.5000
Fax:   908.654.7866
Email: ggewirtz@lernerdavid.com
            jdavid@lernerdavid.com
            litigation@lernerdavid.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendant***
***Funimation Global Group, LLC***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 18, 2022.

*/s/ Gregory S. Gewirtz*
Gregory S. Gewirtz
