IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FIRTIVA CORPORATION, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> FUNIMATION GLOBAL GROUP, LLC, § <br> § <br> *Defendant*. § | Case No. 2:21-cv-00111-JRG-RSP |

<u>**MEMORANDUM ORDER**</u>

Before the Court is the Motion for Clarification of the Court's Claim Construction of "Receiving an Enticement " and "Transmitting the Enticement" filed by Defendant Funimation Global Group, LLC. Dkt. No. 123. Having considered the briefing, the Court **DENIES** the motion.

**I.   BACKGROUND**

Plaintiff Firtiva Corporation alleges Funimation infringes certain claims of U.S. Patent 10,116,999 (the "'999 Patent"). The '999 Patent concerns systems and methods for allowing content to be broadcast without commercial interruption. '999 Patent at 57. The patent explains how increasing production costs results in content providers increasing the number of commercials during broadcasts. Commercial interruptions break up the shows, make the viewing experience less enjoyable, and result in more competition from paid content providers. This, according to the specification, prevented television viewing from reaching its full potential as of the effective filing date. *See generally* '999 Patent at 1:16–37.

To address this problem, the '999 Patent teaches methods and systems for allowing companies to sponsor broadcasts while avoiding commercial interruptions. "The amount of time a viewer spends watching a particular broadcast is recorded along with information about the

1

sponsoring companies or organizations for the broadcast." *Id.* at [57]. "The viewer later accesses a central database, which sends back to the viewer advertisements, coupons, discounts, contests, and other enticements to purchase products, based on the amount of time the viewer spent watching broadcasts or segments of broadcasts that were sponsored by the advertiser." *Id.*

On January 3, 2022, the Court issued a Claim Construction Memorandum Opinion and Order ("Order") resolving eight disputes over claim scope, including the scope of the "receiving an enticement" and "transmitting an enticement" limitations from Claims 1, 10, 18, and 27. Dkt. No. 63. Funimation's motion concerns only one of the previous disputes—whether (and to what extent) the applicant disclaimed the scope of the "receiving an enticement" and "transmitting an enticement" limitations. In its opening claim-construction brief, Funimation contended an enticement may only be received or transmitted after the broadcast so the broadcast is not interrupted. Dkt. No. 47 at 11. Funimation argued that the patent disavowed claim scope expressly in the Abstract and Summary and by disparaging the prior art of providing commercials that interrupt broadcasts in the Background. *Id.* at 11–13. The Court rejected these arguments. Dkt. No. 63 at 8.

## II. DISCUSSION

Funimation now seeks clarification of the scope of the "receiving an enticement" and "transmitting an enticement" limitations. Dkt. No. 123 at 2. Funimation contends the Order's distinction between a broadcaster's interruption of the broadcast with enticements and a viewer's interruption of the broadcast necessitates clarification. Its contention is mainly based on the Court's statement that "if anything, the patent disparages allowing the broadcaster to interrupt the broadcast, not viewers' ability to receive enticements when they wish, even while the broadcast is ongoing." *Id.* at 6 (quoting Dkt. No. 63 at 10) (emphasis omitted). Thus, Funimation argues that

the construction for receiving and transmitting should be "plain and ordinary meaning, but the receiving or transmitting of enticements cannot include a broadcaster sending enticements that interrupt the broadcast." *Id.* at 7.

      The Court rejects Funimation's proposed clarification because Funimation unpersuasively argues again that the patentee disavowed claim scope. Although Funimation seeks a narrower disavowal than it did during claim construction, the Court again finds no disavowal is present. Not only is disavowal by disparagement a "high bar" to meet, *see Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 517 (Fed. Cir. 2015), but "a patentee's discussion of the shortcomings of certain techniques is not a disavowal of the use of those techniques in a manner consistent with the claimed invention." *Epistar Corp. v. I.T.C.*, 566 F.3d 1321, 1335 (Fed. Cir. 2009). Here, the patent explains the shortcoming preventing television from reaching its potential at the time was the lack of "[a] method that allows companies to sponsor broadcasts while avoiding commercial interruptions." '999 Patent at 1:40–42. Such a general comment about the state of the art does not necessarily give rise to disclaimer. *See Epistar Corp.*, 566 F.3d at 1336 (noting "disparaging comments alone do not necessarily show a manifest or express disavowal of the criticized subject matter"); *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1180–81 (Fed. Cir. 2006) (finding that general comments distinguishing the prior art were not sufficient to limit the term "dispensing" to "direct dispensing"); *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1365–67 (Fed. Cir. 2004) (finding descriptions of the deficiencies of using mainframe computers did not exclude mainframes from the term "user computer" because the specification as a whole did not express a clear disavowal of that subject matter). In fact, it simply stated a goal to be achieved— uninterrupted television—without criticizing other structures or methods aimed at accomplishing that goal. This does not constitute disavowal.

3

### III. CONCLUSION

Funimation has not shown clear and unmistakable disavowal, by disparagement or otherwise. Accordingly, the Court rejects Funimation's proposed clarifying construction and **DENIES** its Motion for Clarification (Dkt. No. 123).

**SIGNED this 25th day of May, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE